UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------
ALEXIS ROBINSON,

                              Plaintiff,                 Case No.: 2:21-cv-02537

              -against-

SYOSSET CENTRAL SCHOOL DISTRICT,
THEA PALLOS, and MELANIE SPIEGEL,

                                    Defendants.
------------------------------------------------------------------------

### MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Law Offices of G. Oliver Koppell & Associates
G. Oliver Koppell, Esq.
Scott Doherty, Esq.
*Attorneys for Plaintiff*
99 Park Avenue, Suite 1100
New York, NY 10016
212-867-3838
okoppell@koppellaw.com
sdoherty@koppellaw.coM

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT .............................................................................1

STATEMENT OF FACTS .....................................................................................3

ARGUMENT ..........................................................................................................3

    I.   STANDARD OF REVIEW .......................................................................3

    II.  THE EVIDENCE SHOWS THAT PLAINTIFF CAN SUSTAIN A CLAIM FOR

        RACIAL DISCRIMINATION ..................................................................7

        A.  Ms. Robinson is a member of a Protected Class ...............................8

        B.  Ms. Robinson was Qualified for the Position ....................................8

        C.  Ms. Robinson suffered an Adverse Employment Action ...................9

        D.  The Circumstances Herein Give Rise to an Inference of Discrimination .........9

        E.  The Allegedly Legitimate, Non-Discriminatory Reasons Advanced by

           Defendants for Not Bringing Ms. Robinson back are Purely Pretextual.........14

    III. PLAINTIFF CAN SUSTAIN A RETALIATION CLAIM.........................................17

    IV. PLAINTIFF CAN SUSTAIN A CLAIM FOR HOSTILE WORK ENVIRONMENT

        ...................................................................................................19

    V.  MS. SPIEGEL AND MS. PALLOS SHOULD NOT BE AFFORDED QUALIFIED

        IMMUNITY .............................................................................................21

CONCLUSION.......................................................................................................23

# TABLE OF AUTHORITIES

**Cases**

Armstrong v Metro. Transp. Auth., 07 CIV. 3561 DAB, 2014 WL 4276336  (S.D.N.Y. Aug. 28, 2014) ..................................................................................................................................20

Aulicino v New York City Dept. of Homeless Services, 580 F3d 73 (2nd Cir 2009) .................19

Baguer v Spanish Broadcasting Sys., Inc., 04 CIV. 8393 (RJS), 2010 WL 2813632 (S.D.N.Y. July 12, 2010), affd, 423 Fed Appx 102 (2nd Cir 2011) ..........................................................13

Bldg. Indus. Fund v Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO, 992 F Supp 162 (E.D.N.Y. 1996) ...............................................................................................................13

Chamberlin v Principi, 247 Fed Appx 251 (2nd Cir 2007) ..........................................................18

Chambers v TRM Copy Centers Corp., 43 F3d 29 (2nd Cir. 1994)..........................................4, 10

Cherry v New York City Hous. Auth., 564 F Supp 3d 140 (E.D.N.Y. 2021) ...............................19

Claud v Brown Harris Stevens of Hamptons, LLC, 2:18-CV-01390-NRM-ST, 2023 WL 3858677 (E.D.N.Y. June 7, 2023) ..............................................................................................18

Cook v Arrowsmith Shelburne, Inc., 69 F3d 1235 (2nd Cir. 1995) ........................................10, 13

de la Cruz v New York City Human Resources Admin. Dept. of Social Services, 82 F3d 16  (2nd Cir. 1996) ...........................................................................................................................10, 13

Dechberry v New York City Fire Dept., 124 F Supp 3d 131 (E.D.N.Y. 2015) ..............................9

Dorcely v Wyandanch Union Free School Dist., 665 F Supp 2d 178 (E.D.N.Y. 2009) ...............14

Farmer v Shake Shack Enterprises, LLC, 473 F Supp 3d 309 (S.D.N.Y. 2020)...........................17

Feingold v New York, 366 F3d 138 (2nd Cir. 2004) ....................................................................21

Figueroa v RSquared NY, Inc., 89 F Supp 3d 484 (E.D.N.Y. 2015) ...........................................21

Fouche v St. Charles Hosp., 64 F Supp 3d 452 (E.D.N.Y. 2014) .................................................18

Gallo v Prudential Residential Services, Ltd. Partnership, 22 F3d 1219 (2nd Cir. 1994)...............4

Geras v Hempstead Union Free School Dist., 149 F Supp 3d 300 (E.D.N.Y. 2015).......................7

Giscombe v New York City Dept. of Educ., 39 F Supp 3d 396 (S.D.N.Y. 2014) ........................14

Graham v Long Is. R.R., 230 F3d 34 (2nd Cir. 2000) ..................................................................10

Harris v Forklift Sys., Inc., 510 US 17 (1993) ............................................................19

Henry v NYC Health & Hosp. Corp., 18 F Supp 3d 396 (S.D.N.Y. 2014).....................7

Holcomb v Iona Coll., 521 F3d 130 (2nd Cir 2008) ......................................................4

Howard v Natl. Educ. Ass'n of New York, 911 F Supp 48 (N.D.N.Y. 1995)..................3

Joseph v Owens & Minor Distrib., Inc., 5 F Supp 3d 295 (E.D.N.Y. 2014)...................8

Katzenberg v First Fortis Life Ins. Co., 500 F Supp 2d 177 (E.D.N.Y. 2007)...............3

Kellman v Metro. Transp. Auth., 8 F Supp 3d 351 (S.D.N.Y. 2014)..............................8

Kovaco v Rockbestos-Surprenant Cable Corp., 834 F3d 128 (2nd Cir. 2016) ..............8

Littlejohn v City of New York, 795 F3d 297 (2nd Cir 2015)...............................10, 13

Maney v Corning, Inc., 547 F Supp 2d 221 (W.D.N.Y. 2007) ......................................4

McDonnell Douglas Corp. v Green, 411 US 792 (1973) ...............................................7

Mitchell v State Univ. of New York Upstate Med. Univ., 723 Fed Appx 62 (2nd Cir 2018) ......18

Moore v Kingsbrook Jewish Med. Ctr., 11-CV-3625 MKB, 2013 WL 3968748 (E.D.N.Y. July 30, 2013).........................................................................................................8

Pearson v Callahan, 555 US 223 (2009).......................................................................21

Raspardo v Carlone, 770 F3d 97 (2nd Cir. 2014)........................................................21

Redd v New York Div. of Parole, 678 F3d 166 (2nd Cir 2012)..................................3, 6

Rosen v Thornburgh, 928 F2d 528 (2nd Cir 1991) ........................................................4

Schwapp v Town of Avon, 118 F3d 106 (2nd Cir. 1997) ...............................................4

Terry v. Ashcroft, 336 F.3d 128 (2nd Cir.2003) .........................................................20

The Anderson Group, LLC v City of Saratoga Springs, 557 F Supp 2d 332 (N.D.N.Y. 2008), affd in part sub nom. Anderson Group, LLC v Lenz, 336 Fed Appx 21 (2nd Cir 2009) 4

Villar v City of New York, 135 F Supp 3d 105 (S.D.N.Y. 2015)................................20

White v Huntington, 14-CV-7370 (ST), 2021 WL 826221 (E.D.N.Y. Mar. 4, 2021)................21

Williams v Regus Mgt. Group, LLC, 836 F Supp 2d 159 (S.D.N.Y. 2011) ................14

Wright v City of Syracuse, 611 Fed Appx 8 (2nd Cir. 2015)........................................7

Zann Kwan v Andalex Group LLC, 737 F3d 834 (2nd Cir. 2013) ...................................................3

**Statutes**
Fed.R.Civ.P. 56(e) ....................................................................................................................3

New York State Human Rights Law, Administrative Code §§ 290, et seq.....................................2

Title VII of the Civil Rights Act of 1964 ...................................................................................2

Plaintiff Alexis Robinson ("Plaintiff" or "Ms. Robinson") respectfully submits this Memorandum of Law in opposition to the Motion for Summary Judgment filed by Defendants the Syosset Central School District (the "District"), Thea Pallos ("Ms. Pallos"), and Melanie Spiegel ("Ms. Spiegel"), (collectively "Defendants").

## PRELIMINARY STATEMENT

Ms. Robinson's complaint and demand for compensation is principally in response to the disparate treatment she was subjected to by the Defendants herein relative to her colleagues. Ms. Robinson, who was the first and only African-American teacher to teach at Robbins Lane Elementary School ("Robbins Lane") in the entire tenure of Robbins Lane Principal Ms. Pallos, was informed that her probationary period would not be extended following the conclusion of the 2019-2020 school year despite strong performance reviews.

Ms. Robinson, who worked as a tutor, during the 2018-2019 school year at Robbins Lane, was assigned to the second-grade classroom of Traci Lichtenstein ("Ms. Lichtenstein"), who is Caucasian. That year was Ms. Lichtenstein's first year as a second-grade teacher. There, Ms. Robinson witnessed Ms. Lichtenstein frequently show up to work unprepared to teach and generally exhibit poor performance. Yet, Ms. Lichtenstein was never scrutinized in the same manner as Ms. Robinson would be the following year. Ms. Spiegel, who was both the mentor for Ms. Lichtenstein during the 2018-2019 school year, and Ms. Robinson for the 2019-2020 school year, provided more support for Ms. Lichtenstein and assisted Ms. Pallos in the harassment and discrimination that Plaintiff experienced.

While employed as a second-grade teacher, Ms. Robinson was subjected to incessant "drive-bys" by Ms. Pallos that interrupted her teaching and interfered with her work environment. She was ostracized by her peers, who would schedule team meetings in secret and meet without

her. To make matters worse with respect to such ostracization, Ms. Pallos and Ms. Spiegel criticized Ms. Robinson for not being "collaborative" enough. Such criticism is revealing of a theme that permeates throughout this matter. That Ms. Robinson was subjected to invalid criticism. As this Court will see below, and in Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts, every single one of the alleged criticisms offered by Defendants with respect to Ms. Robinson's perfromance can be refuted.

Plaintiff has brought claims herein for race-based employment discrimination, hostile work environment, and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and New York State Human Rights Law, Administrative Code §§ 290, et seq., ("NYSHRL").

Defendants' motion for summary judgment should be denied because there are multiple questions of fact that are more properly resolved before a jury. Chief among them being Plaintiff's performance. Defendants allege that Plaintiff displayed poor performance, yet this is simply not reflected in her performance reviews. Furthermore, Defendants' attempts to explain this discrepancy are riddled with contradictions and claims that are flatly refuted by the relevant evidence herein. Additionally, Plaintiff can demonstrate that she was subjected to race-based employment discrimination because the circumstances herein, namely the disparate treatment she was subjected to, give rise to an inference of discrimination. Plaintiff can demonstrate a claim for retaliation in that the decision not to extend her probationary period was made a mere two days after Angela Alfred ("Ms. Alfred"), Robbins Lane's building union representative, discussed Ms. Robinson's complaints related to the racially discriminatory work environment at Robbins Lane and the disparate treatment she was being subjected to with Ms. Pallos. Finally, Ms. Robinson can sustain a claim for hostile work environment because she was subjected to numerous unannounced visits from Ms. Pallos that interfered with her work and because she was ostracized by her peers

while employed at Robbins Lane, who would meet without her. Simply put, Defendants are not entitled to summary judgment.

## STATEMENT OF FACTS

In the interests of brevity, Plaintiff respectfully refers the Court to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts for the material facts relevant hereto.

## ARGUMENT

### I.   STANDARD OF REVIEW

Summary judgment is only appropriate where, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Zann Kwan v Andalex Group LLC, 737 F3d 834, 843 (2nd Cir. 2013). The moving party bears the burden of showing that there is no genuine issue of fact. Katzenberg v First Fortis Life Ins. Co., 500 F Supp 2d 177, 191 (E.D.N.Y. 2007). With respect to a motion for summary judgment, "the Court must resolve all ambiguities, and draw all reasonable inferences, against the moving party." Howard v Natl. Educ. Ass'n of New York, 911 F Supp 48, 50 (N.D.N.Y. 1995). "Only when the Court finds it apparent that no rational finder of fact could find in favor of the non-moving party because the evidence to support its case is so slight should summary judgment be granted." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v New York Div. of Parole, 678 F3d 166, 173-74 (2nd Cir 2012). "Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Id. at 74 (citing Fed.R.Civ.P. 56(e) Advisory Committee Note (1963)). "It is clear that the burden of proof that must be met to permit an employment-discrimination plaintiff to survive a summary judgment motion as the prima facie

stage is *de minimis.*" <u>Maney v Corning, Inc.</u>, 547 F Supp 2d 221, 232 (W.D.N.Y. 2007)(citing

<u>Chambers v TRM Copy Centers Corp.</u>, 43 F3d 29, 37 (2nd Cir. 1994)

"We have repeatedly expressed the need for caution about granting summary judgment to

an employer in a discrimination case where, as here, the merits turn on a dispute as to the

employer's intent." <u>Holcomb v Iona Coll.</u>, 521 F3d 130, 137 (2nd Cir 2008); <u>see also</u>, <u>Schwapp v</u>

<u>Town of Avon</u>, 118 F3d 106, 110 (2nd Cir. 1997); <u>see also</u>, <u>Gallo v Prudential Residential</u>

<u>Services, Ltd. Partnership</u>, 22 F3d 1219, 1224 (2nd Cir. 1994). This Court must also be cognizant

of the fact that, "employment discrimination is often accomplished by discreet manipulations and

hidden under a veil of self-declared innocence. An employer who discriminates is unlikely to leave

a 'smoking gun,' such as a notation in an employee's personnel file, attesting to a discriminatory

intent." <u>Rosen v Thornburgh</u>, 928 F2d 528, 533 (2nd Cir 1991). Therefore, "a plaintiff may

establish a discriminatory treatment claim based on the cumulative weight of circumstantial

evidence." <u>The Anderson Group, LLC v City of Saratoga Springs</u>, 557 F Supp 2d 332, 340

(N.D.N.Y. 2008), <u>affd in part sub nom.</u> <u>Anderson Group, LLC v Lenz</u>, 336 Fed Appx 21 (2nd Cir

2009)

Here, Defendants' motion for summary judgment itself highlights several of the various

disputes with respect to material facts between the parties and even highlights disputes between

the Defendants themselves. These disputes are littered throughout the parties respective 56.1

Statements. <u>See generally</u>, <u>Pla. 56.1</u>.

The single most prominent question of material fact, and one whose existence single

handedly defeats any potential consideration of granting Defendants' motion for summary

judgment herein, is the question of Plaintiff's performance while employed by the District.

Defendants claim Ms. Robinson displayed alleged shortcomings with respect to performance as

early as October 2019. Def. 56.1 at ¶ 165; Def. 56.1 at ¶ 166. Yet, such a contention is clearly and unequivocally refuted by the relevant documentary evidence. Def. Ex. LL at D000220-221. Ms. Robinsons' October 7, 2019, observation, which was conducted by Ms. Pallos, is devoid of any indication of any alleged perfromance struggles. Id. Ms. Robinson received only scores of "effective" or "highly effective" in each of the various subcategories and her total score is 3/4. Id. Ms. Pallos attempts to explain this apparent discrepancy by stating "early on, we try to be a support team. We try to help the person. We help them grow initially." Def 56.1 at ¶169. However, Ms. Pallos' inference that she does not give negative feedback to new teachers, to the extent that is the inference she is making with such statement, is clearly and unequivocally refuted by the contents of Ms. Lichtenstein's October 15, 2018, perfromance review. See, Def. Ex. JJ at D000427-429. Ms. Lichtenstein's scored a 29/44 in the October 15, 2018, performance review, that included a rating of "ineffective" in the subcategory "uses questioning techniques" as well as a score of "developing" in four other subcategories. Pla. 56.1 at ¶366. Ms. Pallos even tries to downplay Plaintiff's work as a tutor during the 2018-2019 school year by stating that she performed "okay." Def 56.1 at ¶100. Yet Ms. Robinson remembers Ms. Pallos and Ms. Spiegel praising her for her work as tutor. Pla. 56.1 at ¶100; Def. Ex. G. at 35:9-36:2. Furthermore, again the documentary evidence refutes any contention that Ms. Robinson displayed any alleged shortcomings as a tutor. See, Pla. Ex. 3.

Defendants contend that none of the 2018-19 tutors were hired for teaching positions at Robbins Lane at the end of the 2018-19 school year. Def 56.1 at ¶111. Yet again, this is clearly refuted by the relevant documentary evidence. Natalia Manetta, who was a Caucasian tutor hired alongside Ms. Robinson for the 2018-2019 school year, was hired as a first-grade teacher for the 2019-2020 school year at Robbins Lane. Pla. 56.1 at ¶111. See, Def. Ex. AA (Tutor list for 2018-

2019 which features Natalia Manetta); see also, Pla. Ex. 4 (Natalia Manetta is listed). Additionally, Lindsey Creegan who was a Caucasian tutor hired alongside Ms. Robinson for the 2018-2019 school year, was hired as a special education teacher for the 2019-2020 school year at Robbins Lane. . Pla. 56.1 at ¶111. See, Def. Ex. AA (Tutor list for 2018-2019 which features Lindsey Creegan); see also, Pla. Ex. 4 (Lindsey Creegan is listed).

Defendants contend that Ms. Robinson ignored a text message sent to her by colleague Jennifer Petrucco ("Ms. Petrucco"). Def 56.1 at ¶336. Apparently, Ms. Petrucco sent Ms. Pallos a letter complaining that Ms. Robinson had not responded to her text. Id. at 335.; Def. Ex. X. Notwithstanding the fact that the purported letter is dated an entire month before the alleged incident occurred, a review of the actual text messages in question plainly and unequivocally shows that Ms. Robinson did respond. Pla. 56.1 at ¶¶335-336; Pla. Ex. 23.

Defendants even contradict each other. Ms. Pallos testified in her deposition that she assigned Ms. Spiegel to be the mentor of Ms. Lichtenstein for the 2018-2019 school year. Pla. 56.1 at ¶ 365; Def. Ex. E.  at 78:9-11. Yet Ms. Spiegel claimed that she had not mentored anyone else in her career, either before or after Ms. Robinson. Pla. 56.1 at ¶ 363; Def. Ex. F at 63:2-9. She also affirmatively stated that she never mentored Ms. Lichtenstein at any time. Pla. 56.1 at ¶ 364; Def. Ex. F at 63:14-17. It is completely impossible for both of those statements to be true, meaning one of them is lying. Thus, the credibility of both Ms. Spiegel and Ms. Pallos must be called into question by this Court. This in and of itself completely precludes summary judgment herein. Redd, supra, 678 F3d at 174 ("Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate.")

All in all, these contradictions on the part of Defendants in combination with the ease with which so many of Defendants contentions are plainly refuted by the documentary evidence herein, necessitates denying Defendants' motion for summary judgment. Accordingly, Defendants' motion for summary judgment should be denied.

## II.    THE EVIDENCE SHOWS THAT PLAINTIFF CAN SUSTAIN A CLAIM FOR RACIAL DISCRIMINATION

Summary Judgment in favor of the Defendants with respect to Plaintiff's claim for racial discrimination is improper here where the evidence shows that Plaintiff was indeed subjected to racial discrimination in violation of Title VII and the NYSHRL. Furthermore, Defendants do not have legitimate, non-discriminatory reasons for their actions. The allegedly legitimate reasons they profess are purely pretextual as they are plainly and unequivocally contradicted by the evidence herein. Therefore, Defendants' motion for summary judgment should be denied.

The standard for assessing a claim for racial discrimination made under Title VII and the NYSHRL are the same. Henry v NYC Health & Hosp. Corp., 18 F Supp 3d 396, 404 (S.D.N.Y. 2014). A prima facie case of employment discrimination under title VII and the NYSHRL requires a Plaintiff to demonstrate: "(1) [s]he is a member of a protected class; (2) [s]he was qualified for [her] position; (3) [s]he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Geras v Hempstead Union Free School Dist., 149 F Supp 3d 300, 324 (E.D.N.Y. 2015) (citing Wright v City of Syracuse, 611 Fed Appx 8, 11 (2nd Cir. 2015)). If the plaintiff meets the minimal burden of establishing a prima facie case, the burden of production then shifts to the defendant to offer a legitimate, nondiscriminatory rationale for the adverse employment action." Id. (citing McDonnell Douglas Corp. v Green, 411 US 792, 802 (1973). If the defendant does offer allegedly legitimate, nondiscriminatory reasons for the adverse employment action, the burden shifts back

to the Plaintiff to, "raise sufficient evidence upon which a reasonable jury could conclude by a preponderance of the evidence that the [adverse employment action] was based, at least in part, on discrimination." Kellman v Metro. Transp. Auth., 8 F Supp 3d 351, 370 (S.D.N.Y. 2014)

A.  Ms. Robinson is a member of a Protected Class

Ms. Robinson is African-American and therefore is a member of a protected class. See, Joseph v Owens & Minor Distrib., Inc., 5 F Supp 3d 295, 308 (E.D.N.Y. 2014), affd, 594 Fed Appx 29 (2nd Cir. 2015)(holding that plaintiff belonged to the protected class of African-American people); see also, Moore v Kingsbrook Jewish Med. Ctr., 11-CV-3625 MKB, 2013 WL 3968748, at *5 (E.D.N.Y. July 30, 2013) (same). Defendants do not contest this. Def. 56.1 at ¶1. Thus, this Court must rule that Plaintiff is a member of a protected class.

B.  Ms. Robinson was Qualified for the Position

Defendants claim that Ms. Robinson is not qualified for the position of second-grade teacher because of "her poor performance and failure to improve." Def. Memo at pg. 5. Notwithstanding the fact that Plaintiff can clearly demonstrate that she possesses the basic skills necessary for performance of the job, Defendants contention here highlights the myriad of questions of fact at issue herein. Defendants claim that Ms. Robinson exhibited poor performance, yet the record in this matter does not remotely demonstrate that. In fact, the record largely indicates the exact opposite, that Ms. Robinson performed well. Thus, this Court must hold that Ms. Robinson was qualified for the position.

To demonstrate that a plaintiff is qualified for a position, she must show that "she possesses the basic skills necessary for performance of the job." Kovaco v Rockbestos-Surprenant Cable Corp., 834 F3d 128, 136 (2nd Cir. 2016) Thus, "especially where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." Id.

Here, Plaintiff can clearly demonstrate that she possesses the basic skills necessary for performance of the job. She graduated from Touro College with a masters degree in general and special education for grades 1-6. Pla. 56.1 at ¶78. Her performance reviews as a teacher are largely positive. See, Def. Ex. LL. Ms. Pallos even admitted that she could not recall any parent or student complaining about Ms. Robinson. Pla. 56.1 at ¶¶378-379. Furthermore, it is asinine for Defendants to argue that Ms. Robinson was somehow not qualified for a job that they hired her for after thoroughly reviewing her qualifications and subjecting her to multiple interviews. See, Def. 56.1 at ¶¶ 123-128. Thus, this Court must rule that Ms. Robinson was qualified for the position.

          C.  Ms. Robinson suffered an Adverse Employment Action

Ms. Robinson suffered an adverse employment action when she was told that her probationary status would be revoked following the 2019-2020 school year. See, Dechberry v New York City Fire Dept., 124 F Supp 3d 131, 147 (E.DN.Y. 2015) ("A plaintiff suffers an adverse employment action when she experiences a materially adverse change in the terms and conditions of employment."). Defendants do not contest this. Def. 56.1 at ¶323. Thus, this Court must rule that Ms. Robinson suffered an adverse employment action.

          D.  The Circumstances Herein Give Rise to an Inference of Discrimination

Ms. Robinson's adverse employment action occurred under circumstances that would give rise to an inference of discrimination in that she was subjected to disparate treatment relative to a similarly situated colleague who is not a member of a protected class and because she was ultimately replaced with a Caucasian person. It also must not be lost on this Court that many others have commented publicly online via the Instagram profile @bipocatsyosset about the overarching discriminatory environment present within the District. Thus, this Court must rule that Ms. Robinson's adverse employment action occurred under circumstances that would give rise to an inference of discrimination.

A plaintiff may raise an inference of discrimination by showing "…the more favorable treatment of employees not in the protected group…or the sequence of events leading to the plaintiff's discharge." Littlejohn v City of New York, 795 F3d 297, 312 (2nd Cir 2015); Graham v Long Is. R.R., 230 F3d 34, 39 (2nd Cir. 2000) ("A plaintiff may raise such an inference by showing that the employer subjected him to disparate treatment, that is, treated him less favorably than a similarly situated employee outside his protected group.") Whether two employees are similarly situated ordinarily presents a question of fact for the jury. Graham, supra, 230 F3d at 39.

An inference of discrimination also arises when, "an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." Littlejohn, supra, 795 F3d at 312-313; see also, de la Cruz v New York City Human Resources Admin. Dept. of Social Services, 82 F3d 16, 20 (2nd Cir. 1996) ("As a Puerto Rican, de la Cruz is a member of a protected class. Because de la Cruz was replaced by a black female, he also satisfies the fourth prong of the *prima facie* case."); see also, Cook v Arrowsmith Shelburne, Inc., 69 F3d 1235, 1239 (2nd Cir. 1995))("To establish a prima facie case of gender discrimination, a female plaintiff must show that she was qualified for the position, that her employer discharged her, and that the employer sought or hired a male to replace her.")

"Since the court, in deciding a motion for summary judgment, is not to resolve issues of fact, its determination of whether the circumstances give rise to an inference of discrimination must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn." Chambers, supra, 43 F3d at 38.

Here, Ms. Robinson alleges that she was subjected to disparate treatment relative to Ms. Lichtenstein. Pla. 56.1 at ¶¶90, 359-361, 390-393. Ms. Lichtenstein is similarly situated in all respects to Ms. Robinson in that Ms. Lichtenstein was a first-year, second grade teacher during the 2018-2019 school year, just as Plaintiff was a first-year, second grade teacher during the 2019-2020 school year. Def. 56.1 at ¶¶2, 84, 86. Ms. Robinson alleges that, when she was assigned to Ms. Lichtenstein's second grade class as a tutor during the 2018-2019 school year, Ms. Lichtenstein would frequently show up to work unprepared to teach. Pla. 56.1 at ¶88. That Ms. Lichtenstein struggled in her capacity as a first -year teacher is plainly apparent from a review of her October 15, 2018, perfromance review. See, Def. Ex. JJ at D000427-429. Ms. Lichenstein received a 29/44 in her first performance review that included a rating of "ineffective" in the subcategory "uses questioning techniques" as well as a score of "developing" in four other subcategories. Id.; Pla. 56.1 at ¶366. Ms. Robinson, by contrast, did not receive a single "ineffective" rating in any subcategory in any of her 2019-2020 performance reviews. Pla. 56.1 at ¶367; Def. Ex. LL. Defendants claim that Ms. Lichtenstein improved over the course of the year throughout the 2018-2019 school and Ms. Robinson did not during the 2019-2020 school year, but that is a question of fact, as it cannot be definitely determined from an examination of the respective performance evaluations. See, Def. Ex. JJ; see also, Def. Ex. LL. Given that Ms. Robinson's early reviews are so much stronger than Ms. Lichtenstein's, it is not reasonable for Defendants to argue that Ms. Lichtenstein performed better than Plaintiff.

By comparing Ms. Robinson's and Ms. Lichtenstein's various reviews, it is also clear that Ms. Lichtenstein received comparatively more support from Ms. Pallos and Ms. Spiegel than Robinson. Pla. 56.1 at ¶361. This is evidenced by the fact that Ms. Lichtenstein's performance reviews from her first year as a second-grade teacher were more comprehensively filled out than

Ms. Robinson's were during her first year as a second-grade teacher. Compare, Def. Ex. JJ, with, Def. Ex. LL. For Ms. Robinson's January 8, 2020, observation, she is not given a score in a single subcategory. Def. Ex. LL at D000228-229.

The sequence of events that lead to Ms. Robinson's discharge must not be lost on this Court either. Ms. Pallos admitted in her deposition that Ms. Robinson was the only African-American teacher to work at Robbins Lane throughout Ms. Pallos' entire tenure. Pla. 56.1 at ¶376. Additionally, Ms. Robinson was not informed of her right to union representation at the February 3, 2020, meeting or the February 11, 2020, meeting. Id. at ¶¶ 384-387. While Defendants contend that there was no duty to inform Ms. Robinson of her right to union representation at such meetings because neither meeting was a disciplinary meeting, that presents yet another question of fact for the jury. Id. This is especially true considering neither Ms. Spiegel nor Ms. Pallos could define exactly what constitutes a "disciplinary meeting," and Ms. Alfred informed Plaintiff that both meetings were in fact "disciplinary meetings," and that she should have been offered the right to union representation at such meetings. Id. at ¶¶ 385-388. In fact, Ms. Alfred informed Ms. Robinson that, in all of Ms. Alfred's time working at Robbins Lane, she never witnessed a teacher be treated by Ms. Pallos in the manner that Ms. Robinson was treated. Id. at ¶ 389. When Ms. Alfred's statement is read with the fact that Ms. Robinson was the only African-American teacher during the entirety of Ms. Pallos' tenure in mind, it becomes almost impossible to ignore the inference of discrimination herein.

The existence of the Instagram profile @bipocatsyosset must not be lost on this Court either. Id. at ¶362. The profile provides a medium for alumni, students, and teachers within the District to anonymously share stories of racism they have experienced within the District. Id. This profile has 839 followers as of September 14, 2023. Id. The profile can be accessed via the

following URL: (https://www.instagram.com/bipocatsyosset/?hl=en). While Defendants may attempt to argue that the statements present in the posts are inadmissible hearsay and therefore should not be considered by the Court, this Court should not be persuaded to do so. See, Bldg. Indus. Fund v Local Union No. 3, Intern. Broth. of Elec. Workers, AFL-CIO, 992 F Supp 162, 173 (E.D.N.Y. 1996) ("…a party opposing summary judgment generally need not prove its evidence in admissible form"). The page is littered with posts about people experiencing racism within the District. Pla. Ex. 2. It is evident from such page that an overachring environment of discrimination exists within the District.

To the extent this Court rules that Ms. Robinson was not subject to disparate treatment relative to Ms. Lichtenstein, this Court must still find that Ms. Robinson's adverse employment action occurred under circumstances giving rise to an inference of discrimination due to the fact that she was replaced by Dominique Prudente, a Caucasian. Pla. 56.1 at ¶395; Littlejohn, supra, 795 F3d at 312-313; de la Cruz, supra, 82 F3d at 20; Cook, supra, 69 F3d at 1239.

This Court should not be persuaded by Defendants citation to Baguer v. Spanish Broad. Sys., Inc. Def. Memo at pg. 8. For one, in that case the Court ruled that the plaintiff's membership in the protected class at the time he was hired "weakened" the inference of discrimination, not that it eliminated it. Baguer v Spanish Broadcasting Sys., Inc., 04 CIV. 8393 (RJS), 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010), affd, 423 Fed Appx 102 (2nd Cir 2011). Furthermore, Ms. Pallos testified that she did not want to hire Plaintiff for the open probationary teacher position, but rather suggested either Jeremy Plotkin or Melissa Hagan for the role. Def. 56.1 at ¶118. Both of whom are Caucasian. Id. at ¶119. Thus, this court should not rule that there is no inference of discrimination herein because Ms. Robinson was African-American at the time she was hired.

Accordingly, this Court must rule that Ms. Robinson's adverse employment action occurred under circumstances that give rise to an inference of discrimination.

### E.  The Allegedly Legitimate, Non-Discriminatory Reasons Advanced by Defendants for Not Bringing Ms. Robinson back are Purely Pretextual.

The allegedly legitimate non-discriminatory reasons advanced by the Defendants for not bringing Ms. Robinson back are pretextual in that they are refutable by the evidence submitted herein. Thus, this Court must rule that such reasons are pretextual.

To demonstrate that an employer's stated allegedly legitimate, nondiscriminatory reasons for the allegedly discriminatory action are pretextual a "plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." Dorcely v Wyandanch Union Free School Dist., 665 F Supp 2d 178, 193 (E.D.N.Y. 2009).   A "Discrimination claimant may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." Id; see also, Giscombe v New York City Dept. of Educ., 39 F Supp 3d 396, 404 (S.D.N.Y. 2014); see also, Williams v Regus Mgt. Group, LLC, 836 F Supp 2d 159, 174 (S.D.N.Y. 2011) ("The factfinder may disbelieve the defendant's explanation either because the facts underlying the explanation are false or because the explanation is weakened by inconsistencies or logical flaws.")

Here, Defendant's proffered legitimate reasons are littered with inconsistencies, contradictions and incoherencies. Defendants claim that "the District's decision was predicated on Robinson's ineffectual performance." Def. Memo at pg. 10. Yet, Ms. Robinson's performance

14

reviews are largely positive. See, Def. Ex. LL. Even the lone review that is not overwhelmingly positive, which occurred on January 8, 2020, is devoid of any scores related to any of the subcategories. Def. Ex. LL at D000228-229. Furthermore, the second sentence of Ms. Pallos' general comments at the bottom of the review reads "You demonstrated a mastery of the many skills we have discussed within the workshop model." Id. at D000229. To simultaneously describe someone as displaying "mastery" while also referring to them as "ineffectual" is nothing short of inconsistent. Furthermore, Ms. Robinson was asked to represent the entire second-grade team and lead a presentation of a science lesson before the District Board of Education. Def. 56.1 at ¶248. It is certainly inconsistent to contend that someone is "ineffectual" despite the fact that such person was asked to present on behalf of their entire team.

Defendants next contend that Ms. Robinson failed to keep her classroom up to the professional standards that the District expects of all its teachers. Def. Memo at pg. 10. Notwithstanding the fact that Defendants provide no further context as to the specifics of that allegation in their Memorandum of Law, these allegations are plainly refuted by the documentary evidence submitted herein. Defendants accused Plaintiff of not setting up her classroom library, but she in fact did, as evidenced by pictures of students in her class using such books. Pla. 56.1 at ¶245; Pla. Ex. 15. Defendants accused Plaintiff of not setting up and updating her classroom bulletin boards, yet again this is contracted by pictures that depict such bulletin boards in Plaintiff's classroom. Pla. 56.1 at ¶246; Pla. Ex. 16.

Defendants also contend that Ms. Robinson was "was inattentive in meetings and lacked enthusiasm during visits." Def. Memo at pg. 10. Yet there is no evidence in the record to support such a contention. Defendants do not allege that Ms. Robinson was absent from any meetings. See generally, Def. 56.1. Further there is no indication that Ms. Robinson was either "inattentive" or

"lacked enthusiasm" in any of her performance reviews. See, Def. Ex. LL. In the October 7, 2019, review, Ms. Pallos writes, "…the children were engaged while I was there with a math problem involving place value." Id. at D000221. It is certainly inconsistent to claim that someone "lacks enthusiasm" while simultaneously praising them for getting children engaged. In the November 4, 2019, review, Ms. Pallos writes, "…the lesson's content was well delivered with the language being simple, clear, and expressive. Id. at D000223. Again, it is inconsistent to refer to someone as lacking enthusiasm while praising them for using "expressive language." Furthermore, Ms. Spiegel referred to Ms. Robinson as a strong public speaker. Pla. 56.1 at ¶375; Def. Ex. F at 115:4-5. Ms. Pallos also called Ms. Robinson a "warm teacher." Pla. 56.1 at ¶381; Def. Ex. E at 43:22.

Defendants then contend that Ms. Robinson, "failed to learn and collaborate with other staff members, particularly the other second grade teachers." Def. Memo at pg. 10. Yet this is plainly contradicted by the evidence. Ms. Robinson made every attempt she could to collaborate with her colleagues. Pla. 56.1 at ¶185; Defs. Ex. D at 152:15-23; Def. Ex. QQ. In fact, the other second grade teachers would frequently meet without her and/or ignore her. Pla. 56.1 at ¶185; Def. Ex. G at 86:22-25. There was even one instance in February of 2020 where Ms. Robinson attempted to meet with the other second grade teachers, but found them hiding in the dark, in a corner of a room, with the door closed, with Ms. Spiegel present. Pla. 56.1 at ¶185; Pla. Ex. 10. Ms. Robinson also scored a 3.91/4 in her lone review of a collaborative lesson. Def. 56.1 at ¶¶217, 220, 221. Ms. Pallos even commented on the performance review associated with that lesson, "It was an absolute pleasure to watch the highest level of collaboration that occurred between the two classes." Def. Ex. LL at D000227. It is extremely inconsistent to criticize Ms. Robinson for allegedly failing to collaborate well, but simultaneously give her a nearly perfect score on a perfromance review for a collaborative lesson. Def. 56.1 at ¶217.

16

Finally, Defendants contend that Ms. Robinson's "students demonstrated inferior work product when compared to their second-grade peers." Def. Memo at pg. 10. This contention is patently false and simply not supported by the record. No student ever complained to Ms. Pallos about Ms. Robinson. Pla. 56.1 at ¶378; Def. Ex. E. at 26:16-17. Ms. Pallos additionally could not remember any complaints made by parents to her about Ms. Robinson. Pla. 56.1 at ¶379; Def. Ex. E. at 26:18-19; Pla. Ex. 29. Furthermore, the idea that Ms. Robinson's students displayed inferior work products when compared to their peers is not reflected in Ms. Robinson's performance reviews. See, Def. Ex. LL. To claim now that Ms. Robinson's students displayed inferior work products when compared to their peers when there is no indication of that fact in Ms. Robinson's perfromance reviews is extremely inconsistent.

Accordingly, this Court must find that Plaintiff can sustain a claim for racial discrimination. Thus, Defendant's motion for summary judgment must be denied.

## III.   PLAINTIFF CAN SUSTAIN A RETALIATION CLAIM

Summary Judgment in favor of the Defendants with respect to Plaintiff's claim for retaliation is improper here. This is because the evidence shows that Plaintiff was told that her probationary period would not be extended following the end of the 2019-2020 school year a mere two days after she was told by Ms. Alfred that Ms. Alfred spoke to Ms. Pallos about Ms. Robinson's complaints related to the discriminatory environment at Robbins Lane as well as the disparate treatment Ms. Robinson experienced. Therefore, Defendants' motion for summary judgment should be denied.

The standard for a plaintiff to establish a retaliation claim is the same under both Title VII and the NYSHRL. Farmer v Shake Shack Enterprises, LLC, 473 F Supp 3d 309, 330 (S.D.N.Y. 2020). To establish a prima facie case of retaliation under Title VII and the NYSHRL, a plaintiff

must demonstrate "(1) [she] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." Mitchell v State Univ. of New York Upstate Med. Univ., 723 Fed Appx 62, 63 (2nd Cir 2018).

To show participation in a protected activity, a plaintiff must show "that she opposed statutorily prohibited discrimination in a way that 'put the employer on notice' that 'the employee feels that [the employee] has been the object of discrimination.'" Claud v Brown Harris Stevens of Hamptons, LLC, 2:18-CV-01390-NRM-ST, 2023 WL 3858677, at *21 (E.D.N.Y. June 7, 2023) (quoting Fouche v St. Charles Hosp., 64 F Supp 3d 452, 458 (E.D.N.Y. 2014). "A plaintiff may show evidence of informal protests of discriminatory employment practices, including making complaints to management." Claud, supra, 2023 WL 3858677, at *21. A plaintiff does not need to show that retaliation was the only cause of the employer's action, but only that the action would not have occurred but for the retaliatory motive. Id. "The causal connection needed for a prima facie case can also be established indirectly by showing that the protected activity was closely followed in time by the adverse action." Chamberlin v Principi, 247 Fed Appx 251, 254 (2nd Cir 2007).

Ms. Robinson engaged in the protected work activity of contacting Ms. Alfred following the February 2, 2020, meeting and the February 11, 2020, meeting to complain about the racially discriminatory atmosphere at Robbins Lane and the disparate treatment she received. Pla. 56.1 at ¶390; Def. Ex. G at 132:6-13; Pla. Ex. 21. The District was aware of this activity because Ms. Alfred discussed Ms. Robinson's complaints with Ms. Pallos on March 11, 2023. Pla. 56.1 at ¶392; Def. Ex. G. at 133:2-5. Ms. Robinson suffered an adverse employment action when she was told that her probationary status would be revoked following the 2019-2020 school year. Def. 56.1 at

¶323. Finally, a causal connection exists between the protected activity and the adverse action because Ms. Robinson's adverse employment action occurred a mere two days after her employer became aware of her protected work activity. Pla. 56.1 at ¶390; Def. Ex. G at 132:6-13.

Accordingly, this Court must find that Plaintiff can sustain a claim for retaliation. Thus, Defendant's motion for summary judgment must be denied.

## IV.   PLAINTIFF CAN SUSTAIN A CLAIM FOR HOSTILE WORK ENVIRONMENT

Summary Judgment in favor of the Defendants with respect to Plaintiff's claim for hostile work environment is improper here where the evidence shows that Plaintiff was subjected to numerous unannounced visits from Ms. Pallos that interfered with her work. Additionally, she was ostracized by her peers while employed at Robbins Lane, who would meet without her, and then she was unfairly criticized by Ms. Pallos for allegedly not being "collaborative" enough. Therefore, Defendants' motion for summary judgment should be denied.

To establish a Hostile Work Environment Claim under Title VII or the NYSHRL, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Cherry v New York City Hous. Auth., 564 F Supp 3d 140, 181 (E.D.N.Y. 2021). Whether the complained of conduct is sufficiently severe or pervasive depends on the totality of the circumstances. Aulicino v New York City Dept. of Homeless Services, 580 F3d 73, 82 (2nd Cir 2009). In making this determination, the Court should consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a 'mere offensive utterance'; (4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." Id. (citing Harris v Forklift Sys., Inc., 510 US 17, 23 (1993)).

A hostile working environment exists, "when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive." Villar v City of New York, 135 F Supp 3d 105, 130 (S.D.N.Y. 2015) The hostile environment does not need to be "unendurable" or "intolerable," nor must the victim's "psychological well-being" be damaged. Terry v. Ashcroft, 336 F.3d 128, 148 (2nd Cir. 2003). A hostile work environment is shown when, "the incidents of harassment occur either in concert or with regularity that can reasonably be termed pervasive. Armstrong v Metro. Transp. Auth., 07 CIV. 3561 DAB, 2014 WL 4276336, at *19 (S.D.N.Y. Aug. 28, 2014).

Here, beginning in February 2020, Ms. Pallos began to vastly increase the number of unscheduled visits to Ms. Robinson's classroom to review Ms. Robinson's performance. Pla. 56.1 at ¶ ¶239-240; Def. Ex. G at 71:6-13. Ms. Robinson was also subjected to two entirely invalid disciplinary meetings in February of 2020. Pla. 56.1 at ¶¶385-388. She was not offered the right to union representation that she was entitled to at either meeting. Id.

Ms. Robinson was also ostracized at Robbins Lane. The other second grade teachers would frequently meet without her and/or ignore her. Pla. 56.1 at ¶185; Def. Ex. G at 86:22-25. There was even one instance in February of 2020 where Ms. Robinson attempted to meet with the other second grade teachers, but found them hiding in the dark, in a corner of a room, with the door closed, with Ms. Spiegel present. Pla. 56.1 at ¶185; Pla. Ex. 10. This manifested in Ms. Robinson not feeling uncomfortable at Robbins Lane. Def. Ex. W at D000100.

Accordingly, this Court must find that Plaintiff can sustain a claim for hostile work environment. Thus, Defendant's motion for summary judgment must be denied.

## V.    MS. SPIEGEL AND MS. PALLOS SHOULD NOT BE AFFORDED QUALIFIED IMMUNITY

Given that questions of fact exist with respect to the allegedly discriminatory motives of Ms. Pallos and Ms. Spiegel, neither Ms. Spiegel nor Ms. Pallos should be afforded qualified immunity herein.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v Callahan, 555 US 223, 231 (2009). A government official who raises a qualified immunity defense is entitled to summary judgment when either: 1) a constitutional right was not violated or 2) or the right was not clearly established at the time of the violation." Raspardo v Carlone, 770 F3d 97, 113 (2nd Cir. 2014); White v Huntington, 14-CV-7370 (ST), 2021 WL 826221, at *13 (E.D.N.Y. Mar. 4, 2021). A co-worker who "lack[s] the authority to either hire or fire the plaintiff may still be held liable as an aider-abettor under NYSHRL § 296(6) if he actually participates in the conduct giving rise to a discrimination claim." Figueroa v RSquared NY, Inc., 89 F Supp 3d 484, 493 (E.D.N.Y. 2015)(citing Feingold v New York, 366 F3d 138, 158 (2nd Cir. 2004)

In White v Huntington, the plaintiff, who was African-American, brought suit under the NYSHRL and 42 U.S.C. § 1983 after he unsuccessfully applied to a series of full time jobs with the town of Huntington. White, supra, 2021 WL 826221 at *1. There the Court denied the request of two individual defendants for qualified immunity. Id. at *13. The Court wrote, with respect to such two individual defendants, "the evidence produces a genuine issue of material fact as to whether the employment evaluations and subsequent decision not to hire Plaintiff for a Department of General Services, HEO II position in February 2013 were influenced by discriminatory motives in violation of the Fourteenth Amendment." Id. This Court should rule exactly as the Court in

White ruled and hold that neither Ms. Spiegel nor Ms. Pallos is entitled to qualified immunity herein. This is because there exists a question of fact as to whether the actions of Ms. Spiegel and Ms. Pallos were motivated by discriminatory motives in violation of the Fourteenth Amendment.

Here, with respect to Ms. Pallos, it is unequivocally established that she was Plaintiff's supervisor during the 2019-2020 school year. Pla. 56.1 at ¶355. She conducted Plaintiff's performance reviews for that year. Id. at ¶356. Additionally, she made the recommendation that Plaintiff's probationary period be terminated following the 2019-2020 school year. Id. at ¶357. Thus, a question of fact exists as to whether the recommendation of Ms. Pallos to terminate Ms. Robinson's probationary period was motivated by discriminatory animus in violation of the Fourteenth Amendment. Therefore, Ms. Pallos is not entitled to qualified immunity herein.

With respect to Ms. Spiegel, she was Plaintiff's supervisor during the 2018-2019 school year when Ms. Robinson worked as a tutor. Id. at ¶354. While Ms. Spiegel was not Plaintiff's supervisor during the 2019-2020 school year, nor did she perform Plaintiff's performance evaluations that year, she was assigned as Plaintiff's mentor. Def. 56.1 at ¶138. In her capacity as mentor, Ms. Spiegel shared her notes and observations with respect to Plaintiff's perfromance with Ms. Pallos. Id. at ¶154. Ms. Spiegel was also the mentor of Ms. Lichtenstein. Pla. 56.1 at ¶365. Plaintiff contends that she was subjected to disparate treatment in that Ms. Lichtenstein was provided with more support than Ms. Lichtenstein. Id. at ¶¶ 360-361. Thus, a question of fact exist as to whether or not Ms. Spiegel's disparate treatment of Ms. Robinson relative to Ms. Lichtenstein was motivated by discriminatory animus in violation of the Fourteenth Amendment. Therefore, Ms. Spiegel is not entitled to qualified immunity herein.

Accordingly, this Court should rule that neither Ms. Pallos nor Ms. Spiegel is entitled to qualified immunity herein.

**CONCLUSION**

For all of the foregoing reasons, Defendants' motion to dismiss for summary judgment

must be denied in all respects.

Dated: New York, New York
      September 15, 2023

                                 **Law Offices of G. Oliver Koppell & Associates**

                                 By: _____

                                 G. Oliver Koppell, Esq.
                                 Scott Doherty, Esq.
                                 *Attorneys for Plaintiff*
                                 99 Park Ave., Suite 1100
                                 New York, NY 10016
                                 (212) 867-3838
                                 okoppell@koppellaw.com
                                 sdoherty@koppellaw.com